UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| POLY-AMERICA, L.P. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-837-SDJ |
| | § | |
| API INDUSTRIES, INC. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant API Industries, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Dkt. #10). Plaintiff Poly-America, L.P. has responded in opposition to the motion and moves in the alternative for the Court to transfer this action to the United States District Court for the Southern District of New York. (Dkt. #13). Defendant replied in defense of its motion, (Dkt. #19), and Plaintiff subsequently filed a sur-reply to further oppose the motion, (Dkt. #21). Having reviewed the motion, the parties' briefing, and the relevant law, the Court concludes that it lacks personal jurisdiction over API Industries, Inc. But instead of dismissing the case, the Court concludes that the case should be transferred to the United States District Court for the Southern District of New York.

I. BACKGROUND

Plaintiff Poly-America, L.P. ("Poly-America") is a Texas limited partnership. Defendant API Industries, Inc. ("API") is a Delaware corporation that has its principal place of business in New York and has a manufacturing facility in the Eastern District of Texas. The parties are competitors in the retail trash bag marketplace.

1

In 2011, the United States Patent and Trademark Office ("USPTO") granted Poly-America's Application Serial No. 85/174,910 and issued Supplemental Registration No. 4,027,254 ("Orange Drawstring Registration") for the orange color mark as used on the drawstrings of Poly-America's trash bags. On November 11, 2015, API petitioned the Trademark Trial and Appeal Board ("TTAB") to cancel the mark under Section 2(d) of the Lanham Act due to prior use in view of Application Serial No. 77/598,877, which is owned by the Glad Products Company. And nearly five years later, the TTAB made a final decision ("TTAB Decision") to grant API's petition to cancel Poly-America's color mark, concluding that the orange color for trash bag drawstrings was generic and functional. (Dkt. #1-1).[1] The TTAB subsequently denied Poly-America's request for reconsideration. (Dkt. #1-2).

Dissatisfied with that result, Poly-America brought this action against API fifty-nine days later seeking review of the TTAB Decision under the Lanham Act. (Dkt. #1-1); *see also* 15 U.S.C. § 1071(b). Poly-America alleges that the TTAB Decision was incorrect and asks the Court to, among other things, vacate the TTAB Decision and adjudge that its color mark registration be reinstated.

In its complaint, Poly-America asserts that this Court has personal jurisdiction over API because Poly-America's claims arise out of or result from API's activities directed to the Eastern District of Texas and because API's contacts with the State of Texas "are so substantial, continuous, and systematic that due process is not offended by the Court's exercise of personal jurisdiction." (Dkt. #1 ¶ 7). Poly-America also

---

[1] The TTAB Decision is styled *API Industries, Inc. v. Poly-America, L.P.*, Cancellation No. 92062601. *See* (Dkt. #1-1).

alleges that venue is proper because API resides in the Eastern District of Texas. (Dkt. #1 ¶ 8). API disagrees on both fronts and moves to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for improper venue under Federal Rule of Civil Procedure 12(b)(3).

In response to API's motion to dismiss, Poly-America argues that this Court has personal jurisdiction over API and that venue is proper. Alternatively, Poly-America asks the Court to either grant it limited jurisdictional discovery or transfer this action if the Court determines it does not have personal jurisdiction over API. According to Poly-America, it will lose its right to appeal under Section 1071 if the Court dismisses the suit. *See generally* (Dkt. #13). Except for discovery on the jurisdictional and venue issues raised in API's dismissal motion, the Court stayed discovery and all other case deadlines pending the resolution of the dismissal motion. (Dkt. #23, #26). The Court now addresses API's motion to dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a party to raise the defense that a court lacks personal jurisdiction. FED. R. CIV. P. 12(b)(2). A court has personal jurisdiction if the state's "long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (internal citation omitted) (citing *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)). "Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Carmona v. Leo Ship Mgmt., Inc.*,

924 F.3d 190, 193 (5th Cir. 2019) (citing *Sangha*, 882 F.3d at 101). And the long-arm statute's "broad doing business language" gives courts in Texas personal jurisdiction over a nonresident defendant "as far as the federal constitutional requirements of due process will allow." *P N K*, 947 F.3d at 336 (citing *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010)). The burden of establishing jurisdiction falls on the plaintiff, who is "required to present only prima facie evidence." *Id.* (cleaned up). In considering whether the plaintiff has met its burden, a court may review the allegations in the plaintiff's complaint and the contents of the record. *Id.* (citing *Sangha*, 882 F.3d at 101). "Minimum contacts" can be established through "contacts sufficient to assert" general or specific jurisdiction. *Id.* (internal quotation omitted).

### III. DISCUSSION

### A. Personal Jurisdiction

Poly-America argues that this Court has both general and specific personal jurisdiction over API. The Court will address each basis for personal jurisdiction in turn.

### 1. General Jurisdiction

The Court first considers whether it has general jurisdiction over API. "General jurisdiction exists over a non-resident defendant when its 'affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'" *P N K*, 947 F.3d at 336 (internal citation omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131

S.Ct. 2846, 180 L.Ed.2d 796 (2011)). For a corporation, its states of incorporation and principal place of business are "where it is 'at home' and are thus paradigm bases for jurisdiction." *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2015) (citing *Daimler AG v. Bauman,* 571 U.S. 117, 136, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014)). "It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Id.* And, as both parties have recognized, "it is the exceptional case in which a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation subject to general jurisdiction" in the state. *Whitener v. PLIVA, Inc.*, 606 F.App'x 762, 765 (5th Cir. 2015) (per curiam) (internal quotations omitted).

API is clearly "at home" in Delaware, its state of incorporation, and New York, where its principal place of business is located. But Texas is not a "paradigm" forum. *Ritter*, 768 F.3d at 432. The question, then, is whether API's contacts with Texas are "so continuous and systematic" as to render it "essentially at home" in Texas. *P N K*, 947 F.3d at 336. Poly-America argues that API is essentially at home in Texas because it (1) is registered to do business in Texas, (2) has a manufacturing facility in Texas that employs seventy individuals (fifteen percent of API's workforce), (3) lists two facilities and contact addresses on its website (New York and Texas), and (4) markets and distributes the trash bags it manufactures in Texas. The Court disagrees.

5

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), is the "textbook case of general jurisdiction." *Daimler*, 571 U.S. at 129 (internal citations omitted). It also is an "exceptional" case. *Id.* at 130 n.8, 139 n.19. In *Perkins*, the Supreme Court concluded that an Ohio court had general jurisdiction over a company incorporated in the Philippines, where it mined gold and silver. 342 U.S. at 448. During World War II, the company ceased its mining operations while the Japanese occupied the Philippines, and the company's president moved to Ohio, where he maintained an office from which he essentially ran the company, maintained the company's files, held directors' meetings, and oversaw the company's activities. *Id.* at 447–48. The Supreme Court held that the Ohio court had discretion to exercise general jurisdiction over the company because its president carried out "a continuous and systematic supervision of the . . . activities of the company" in Ohio. *Id.* at 448. *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (The *Perkins* president's activities made Ohio "the corporation's principal, if temporary, place of business.").

In *BNSF Railway Co. v. Tyrrell*, the Supreme Court held that BNSF was not "at home" in Montana even though it had extensive contacts with the state. 137 S.Ct. 1549, 1559, 198 L.Ed.2d 36 (2017). The Court explained that BNSF was not incorporated in Montana, nor did it maintain its principal place of business in Montana. *Id.* at 1553. On the other hand, BNSF did have an automotive facility, "over 2,000 miles of railroad track[,] and more than 2,000 employees in Montana," which made up less than five percent of its workforce. *Id.* at 1554. The Court found these

contacts insufficient because the general-jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety" and a "corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 1559.

Fifth Circuit precedent also refutes Poly-America's assertion of general jurisdiction. The Fifth Circuit "has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008). *See also, e.g.*, *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 372–73 (5th Cir. 1987) (holding that nearly $250 million in products sent to Texas, $72 million worth of manufacturing work done in Texas, the existence of an in-state indirect subsidiary, and visits with Texas dealers were insufficient to establish general jurisdiction). And district courts in this circuit have followed this lead. *See, e.g.*, *Garcia Hamilton & Assocs., L.P. v. RBC Capital Markets, LLC*, 466 F.Supp.3d 692, 701 (S.D. Tex. 2020) ("[T]he Court is not convinced, given the standards set in [*BNSF*], that four offices, a division focused on wealth management in Texas, 240 employees, and a business presence in Texas . . . are substantial enough to render [the defendant] at home here."); *Rawls v. Old Republic Gen. Ins. Grp., Inc.*, 489 F.Supp.3d 646, 661 (S.D. Tex. 2020) ("For the Court to exercise general jurisdiction over it, [the defendant] must be 'essentially at home' in Texas, but independent dealerships, service facilities, and even extensive business with customers in Texas are not enough to demonstrate general jurisdiction given the winnowing of that standard by the higher courts over the past decades.").

Poly-America has not made a prima facie case showing that API has sufficient systematic and continuous contacts with Texas to establish general jurisdiction. API's operation of its Texas facility, its employment of seventy workers in Texas, and its distribution of its trash bags in Texas pale in comparison to the contacts establishing the defendant's "principal, if temporary, place of business" in *Perkins*. *Keeton*, 465 U.S. at 780 n.11; *see also Perkins*, 342 U.S. at 448. Unlike in *Perkins*, there is no evidence that any of API's executives work in Texas, that API has held directors' meetings in Texas, or that API manages company-wide policies from Texas. *See Perkins*, 342 U.S. at 447–48. On the contrary, "API's headquarters, corporate records, and decision-making all are located in New York, as is 85% of its workforce." (Dkt. #19 at 8). The contacts alleged here also fall short of the four offices, 240 employees, and business presence in Texas that was insufficient to render the defendant in *RBC* "at home" in Texas. 466 F.Supp.3d at 701.

API's contacts in Texas are more akin to BNSF's contacts in Montana that the Supreme Court deemed insufficient to establish general jurisdiction. *See BNSF*, 137 S.Ct. at 1559. Based on the facts presented, "an appraisal of [API's] activities in their entirety" shows that the vast majority of its workforce and it decision-making occurs in New York, not in Texas. As with BNSF's 2,000 miles of railroad tracks and 2,000 employees in Montana, comprising five percent of its workforce, API's manufacturing facility and seventy employees in Texas, which comprise only fifteen percent of its workforce, is not enough to render API "essentially at home" in Texas. Thus, the Court does not have general personal jurisdiction over API.

## 2. Specific Jurisdiction

The Court next considers whether it has specific jurisdiction over API. When determining whether due process allows the exercise of specific jurisdiction, courts consider: (1) "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there"; (2) "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts"; and (3) "whether the exercise of personal jurisdiction is fair and reasonable." *Carmona*, 924 F.3d at 193 (citing *Seiferth*, 472 F.3d at 271). If the plaintiff establishes the first two elements, the defendant then has the burden of making a "compelling case that the assertion of jurisdiction is not fair or reasonable." *Id.* (internal quotation omitted).

To establish minimum contacts, API must have "'purposefully availed [itself] of the benefits and protections of [Texas]' . . . such that [it] should reasonably anticipate being haled into court there." *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The parties do not dispute that API's activities in Texas meet the first prong. By operating a manufacturing facility and employing seventy employees in Sulfur Springs, Texas, API has "purposely directed its activities toward" Texas. *Carmona*, 924 F.3d at 193. But the parties disagree as to whether Poly-America's "cause of action arises out of or results from the defendant's forum-related contacts." *Id.*

9

Poly-America argues that because API manufactures plastic trash bags at its Texas facility, and because "API brought a cancellation proceeding with the TTAB so that it could manufacture products relating to Poly-America's registration *in Texas*," this action arises out of API's Texas-based conduct. (Dkt. #13 at 2). But according to API, this action arises from API having sought cancellation in the TTAB proceeding in Virginia, not from its manufacturing facility in Texas.

Courts addressing personal jurisdiction in TTAB appeals have consistently focused on the TTAB proceeding, rather than any contacts the defendant has in the forum, as the action giving rise to the case. In *Freud America, Inc. v. Milwaukee Electric Tool Corp.*, the plaintiff in an appeal of a TTAB decision that cancelled the plaintiff's red color mark used on its power tools argued that the defendant's contacts with North Carolina—namely its advertisement of its power tools, sales of its products, solicitation of business, and certificate of authority to do business in North Carolina—gave the North Carolina court specific jurisdiction over the defendant. No. 1:20-CV-109, 2020 WL 8248765, at *5 (M.D.N.C. June 17, 2020). The court disagreed because the plaintiff's complaint "involve[d] only the appeal from the TTAB."[2] *Id.*

The same is true here. Poly-America's complaint "only involves [API] to the extent [API] challenged the validity of the [Orange Drawstring Registration] to the TTAB." *Id.* Nothing in Poly-America's complaint "'arose' out of [API's] contacts with

---

[2] The *Freud* case "involve[d] only the appeal from the TTAB and a declaratory judgment order declaring the Red Mark as used in connection with cutting tools for power woodworking machines . . . not generic and [] registrable as a trademark with the PTO." 2020 WL 8248765, at *5. Likewise, Poly-America's Complaint involves only the TTAB appeal. The *Freud* Court's reasoning thus applies.

10

[Texas].") *Id.* Rather, the "underlying controversy is the TTAB cancelling the [Orange Drawstring Registration]," which "has nothing to do with" API's manufacturing of plastic trash bags in Texas. *Id.*

In *Cardwell v. Investor's Analysis, Inc.*, the court held that it did not have personal jurisdiction over the defendant in a TTAB appeal under the District of Columbia's long-arm statute, which, the court explained, did not "confer personal jurisdiction when the claims asserted [were] unrelated to the acts forming the basis for personal jurisdiction." 620 F.Supp. 1395, 1397 (D.D.C. 1985) (internal citation omitted). Similar to *Cardwell*, the TTAB decision challenged by Poly-America is unrelated to API's Texas contacts. And, as in *Cardwell*, where the "plaintiff's statement of opposition to the registration did not mention defendant's contacts with the [forum], much less allege harm arising from them," *id.*, API's petition to the TTAB mentions Texas only once—as the address and state of organization of Poly-America, (Dkt. #13-2)—and neither TTAB decision mentions Texas at all. Thus, Poly-America's "claim arises from the [TTAB] [D]ecision, not from [API's] contacts with [Texas]." *Cardwell*, 620 F.Supp. at 1397.[3]

---

[3] *See also, e.g., Rieke Corp. v. Am. Flange & Mfg. Co.*, No. 1:06-CV-275, 2007 WL 1724897, at *5 (N.D. Ind. June 12, 2007) ("[T]he Complaint does not indicate that the cause of action relates to American Flange's contacts with Indiana. Further, the TTAB's Decision never even mentions the State of Indiana, nor does the TTAB's Decision in any way relate to or arise out of American Flange's contacts with Indiana. Therefore, based on the record and the arguments of counsel, this Court must conclude that Rieke has failed to make a prima facie showing of specific jurisdiction over Defendant American Flange."); *Younique, L.L.C. v. Youssef*, No. 215-CV-00783, 2016 WL 6998659, at *6–8 (D. Utah Nov. 30, 2016) (concluding that the defendant's initiation of a TTAB proceeding did not confer personal jurisdiction in the forum state and stating there was no "tangible 'injury' to [the plaintiff] in this forum as a result" of the defendant's TTAB petition).

Poly-America also contends that the Court has specific jurisdiction over API based on the "stream-of-commerce" theory or, alternatively, based on the "effects test." These arguments miss the mark. Poly-America correctly states that a defendant is subject to personal jurisdiction when it "'delivers a product that injures the plaintiff into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" (Dkt. #13 at 6) (cleaned up) (quoting *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir. 2018)). But this litigation arises from the TTAB decision—not from any injury allegedly caused by API's trash bags in the forum state.

Poly-America's reliance on *Vosk Int'l Co. v. Zao Gruppa Predpriyatij Ost* is also misplaced. No. C11-1488, 2012 WL 1033535 (W.D. Wash. Mar. 27, 2012). In *Vosk*, the plaintiff, a Washington-based beverage company, contracted with defendants, Russian companies that manufacture and sell beverages in Russia, for the defendants to manufacture products using the plaintiff's English-language labels. *Id.* at *1. Following a TTAB decision adverse to the plaintiff, the plaintiff sued in federal court to challenge the TTAB decision *and* to bring false designation of origin and unfair competition claims. *Id.* The court explained that "[t]here [was] no dispute that pursuant to th[e] contract, Plaintiff provided Defendants with the English-language labels containing the specific drink names and stylized designs *that form the crux of each of its claims*," and that "Defendants *entered into a contract with Plaintiff knowing that Plaintiff was a Washington resident and then purposefully directed their*

*products to this state.*" *Id.* at *5. Thus, the plaintiff's TTAB appeal was closely linked to its additional claims that involved a contract between the parties and the defendants' allegedly tortious conduct in the forum state. Not so in this instance. Poly-America brings no additional claims, there are no contracts underlying the issue, and API's plastic trash bags do not "form the crux of [Poly-America's] claims." *Id.*

Finally, Poly-America raises the "effects test," arguing that "API's action[] in initiating a TTAB cancellation proceeding has the consequence of allowing API to manufacture plastic trash bags with orange drawstrings in Texas, thus harming Poly-America" and relying on the Fifth Circuit's application of the effects test in *Defense Distributed v. Grewal*. (Dkt. #13 at 7–8) (citing *Grewal*, 971 F.3d 485 (5th Cir. 2020), cert. denied, 141 S.Ct. 1736, 209 L.Ed.2d 504 (2021)). Poly-America's reliance on *Grewal* is unpersuasive. In *Grewal*, the New Jersey attorney general's actions (including, among others, sending Defense Distributed a cease-and-desist letter threatening legal action, urging third-party providers to terminate contracts with Defense Distributed, and threatening criminal sanctions) "caused Defense Distributed to cease publication of its materials [nationwide]," "confirm[ed] his intent to crush Defense Distributed's operations," and "[gave] rise to distinct tort causes of action." 971 F.3d at 489, 493–94.

No such circumstances exist in this case. There are no allegations to suggest API intends to "crush" Poly-America's operations. And the only cause of action asserted is based on Poly-America's challenge to the TTAB Decision—not any distinct tort claim. Instead, as API points out, "API's actions do not stop Poly-America from

13

manufacturing or distributing orange-handled bags at all," and "[a]ll that has happened is that Poly-America has lost a supplemental-register trademark registration." (Dkt. #19 at 6). Thus, the Court does not have specific personal jurisdiction over API.[4]

**B. Transfer**[5]

As an alternative to dismissal, Poly-America asks the Court to transfer this case under 28 U.S.C. § 1631 to the Southern District of New York, where API is headquartered. (Dkt. #13 at 11). Poly-America argues that if the Court dismisses this suit outright, it will lose its right to appeal the TTAB Decision under 15 U.S.C. § 1071, which grants a party dissatisfied with a TTAB decision the right to appeal within sixty days. API agrees that the Court has discretion to transfer this action under Section 1631. (Dkt. #19 at 9).

After a civil action or appeal, including for review of an administrative action, is filed, and the court finds there is a "want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in

---

[4] The Supreme Court recently clarified its specific personal jurisdiction jurisprudence. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 209 L.Ed.2d 225 (2021). In *Ford*, "resident-plaintiffs allege[d] that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in Montana and Minnesota." *Id.* at 1032. The Supreme Court concluded that "the relationship among the defendant, the forums, and the litigation" was "close enough to support specific jurisdiction" in Montana and Minnesota courts. *Id.* (cleaned up). This case is demonstrably different. Poly-America's allegations relate to API's petition to the TTAB, not to a product API has "extensively promoted, sold, and serviced" in Texas that malfunctioned and caused Texas residents "in-state injury." *Id.* Thus, the Supreme Court's *Ford* ruling does not impact the Court's holding.

[5] Because the Court lacks personal jurisdiction over API, it need not address the parties' arguments as to venue.

14

which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.

In this case, as in *Cardwell*, "[t]he Court concludes that the interests of justice support transfer of this case to the district court . . . where defendant maintains its principal place of business." 620 F.Supp. at 1398–99 (ruling on "plaintiff's alternative motion to transfer under 28 U.S.C. § 1406(a), which [also] permits transfer 'if it be in the interest of justice'"). "If the case is not transferred, plaintiff's claims would be barred by the 60-day limitation of 15 U.S.C. § 1071(b)." *Id.; see also, Rieke*, 2007 WL 1724897, at *9 (finding transfer of TTAB appeal under Section 1631 in the interest of justice as, "[o]therwise, were we to dismiss the case, Plaintiff Rieke would likely be barred by the applicable statute of limitations from re-filing the suit in the proper jurisdiction"). The Court will therefore transfer this action to the Southern District of New York, where API is at home and where this "appeal could have been brought at the time it was filed." 28 U.S.C. § 1631.

API requests that, in the event the Court exercises its authority to transfer the case, that the transfer be conditioned on Poly-America compensating API for its attorney's fees in bringing its motion to dismiss. (Dkt. #19 at 9). Poly-America argues in opposition that the Court does not have discretion to award attorney's fees in transferring this case. (Dkt. #21 at 4).

The Court's "'basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides

15

otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683–86, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)); *see also Tejero v. Portfolio Recovery Assocs., L.L.C.*, 993 F.3d 393, 395 (5th Cir. 2021) (same). Section 1631 makes no mention whatsoever of attorney's fees. Thus, the "American Rule" governs, and Poly-America and API each pay their own attorney's fees. *Hardt*, 560 U.S. at 253.

### IV. CONCLUSION

For the foregoing reasons, Defendant API's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, (Dkt. #10), is **DENIED**. However, because the Court lacks personal jurisdiction over API, Poly-America's motion in the alternative to transfer this case to the United States District Court for the Southern District of New York, (Dkt. #13), is **GRANTED**. It is further **ORDERED** that the Clerk of this Court shall transfer this matter to the Southern District of New York.

**So ORDERED and SIGNED this 30th day of September, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE